In the Matter of the Application of the MORTGAGE COMMISSION OF THE STATE OF NEW YORK for an Order Directing MULLER PAPER GOODS CO., INC., etc., Pursuant to the Provisions of Section 1077-c of the Civil Practice Act.*

Supreme Court, Queens County, August 29, 1938.

*Maurice Finkelstein,* for Mortgage Commission of the State of New York for the motion.

*Lotterman & Tepper,* for the Muller Paper Goods Co., Inc., opposed.

CUFF, J. The sole question presented is whether or not the owner, who conducts a business in its own name on the mortgaged premises, should be required to list on the income side of the statement that has been furnished under section 1077-c an amount for rent for that part of the premises that his business occupies. The business has not paid rent because it is the owner. Petitioner urges the court to set a fair and reasonable amount as rent and to require that sum to be placed on the income side of the statement. In that event there would be a surplus. Unless that is done, there will be no surplus.

A slight review of what has happened may be appropriate. The parties to this proceeding or their predecessors, it does not matter, established by contract a relationship of mortgagor and mortgagee. The latter under that arrangement was to look to the property and the bondsman for payment of the debt created. Under the contract, among other things, the mortgagee was entitled to payment of the principal on the date set in the mortgage. But this contractual arrangement has been interfered with by the State. An emergency of national proportion was found to exist with which the State had to cope. It enacted laws to obviate insurmountable

* Revd., 256 App. Div. 301.

economic and financial conditions. It told mortgagees that they could not foreclose their mortgages if owners failed to pay principal or an installment on the due date. (Civ. Prac. Act, § 1077-a.) The object of this legislation was to protect owners of real property who could not, because of the condition of the financial market, raise the money necessary to meet the payment of principal as provided in bonds and mortgages. It was not intended to aid those who, having rentable property, were enjoying a profit by reason of that renting business, to the extent of permitting such owners to retain those profits after they had defaulted in the payment of principal or an installment thereof. That was the reason for section 1077-c of the Civil Practice Act. The interference by the State with those contractual obligations, solemnly entered into by the parties thereto and deserving of the utmost respect, was a drastic step but a necessary one. The restraint was confined to suspending the right to enforce payment of the debt. It was relaxed in favor of the lender where the borrower was not in fact financially embarrassed (§ 1077-c). Nothing should be detracted from nor added to the action that the State saw fit to take at that session (1932) of the Legislature called especially to treat with the harrowing emergency. It will be noted that the State by its laws was careful not to attempt to change the relationship created by the parties to these contracts. The borrower still has title to his property. The lender still has his lien as defined by the contract. The latter's right to collect his debt upon default in the payment of principal is merely suspended.

The contract as drawn by the mortgagor and mortgagee never anticipated that the owner would have to pay rent to any one. Even after foreclosure, when an owner has defaulted in every respect and the court has injected a receiver to salvage, for the lender, as much as possible of his security, that owner may not be required to pay rent to the receiver for his own use of the mortgaged premises because to require him to do so would be wholly inconsistent with the existing relationship. (*Holmes* v. *Gravenhorst*, 263 N. Y. 148.) If the owner of the fee paid rent to any one he could no longer be called the owner of the fee. He would have to be given a different status. He would have to be deprived of his ownership. Since the *Holmes* decision was rendered some owners have continued to live on their mortgaged premises without even a thought of remedying their defaults and without payment of any kind right down to the day when a sheriff expels them following the sale in foreclosure of the premises divesting them of title. That is called " an abuse " in Special Term by distracted mortgagees seeking to circumvent the *Holmes* decision and it may be,

but to deal with the situation otherwise would be to alter that relationship which the parties established themselves and thus lead to great confusion.

Petitioner herein is confronted with that relationship. To do his bidding the court would have to require the owner of the fee to pay rent — in this instance — to himself. Reason prompts petitioner's demand. There is also created an unfair economic situation because this manufacturer is turning out his products from rent-free premises. How, it may be asked, may his rivals compete against that? This court may consider none of those things; perhaps the Legislature would.

All the court's power springs from section 1077-c, which does not even hint at imposing rent upon the owner of the fee for the benefit of the mortgagee.

The petitioner cannot prevail because of the violence that his proposal would do to the relationship of the parties which the courts and the State, even when confronted by a great emergency, have ordained should remain undisturbed.

Motion denied.